# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-mj-06126 USA v. Ronald Alexis Coreas, et al.<br>2:25-mj-6579 USA v. Yovany Macario Canil ✓<br>2:25-mj-6733 USA v. Virginia Reyes, et al. | Date | November 12, 2025 |

| Present: The Honorable | Dolly M. Gee, Chief United States District Court |
|---|---|
| Interpreter | None |

| Kevin Reddick | None | Neil Thakor; Kali M. Yallourakis; Patrick D. Kibbe - Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Ronald Alexis Coreas, et al. - Not Present | | | | Andrew S. Cowan, CJA, et al. - Not Present | | | |
| Yovany Macario Canil - Not Present ✓ | | | | Kyra Kristine Nickell, DFPD - Not Present ✓ | | | |
| Virginia Reyes, et al. - Not Present | | | | Gregory Nicolaysen, CJA, et al. - Not Present | | | |

(In Chambers)   **NOTICE RE USAO October 27, 2025 MEMORANDUM**

On October 21, 2025, in accordance with current procedures, the United States Attorney's Office ("USAO") notified the court and related agencies that it anticipated a "takedown" involving multiple defendants on October 29, 2025. In light of the current CJA funding crisis, there was a concern that the number of defendants would exceed the number of available CJA attorneys. The duty Magistrate Judge expressed concern to the USAO regarding such matter and advised the USAO to be prepared to address the matter. The USAO then generated the attached memorandum dated October 27, 2025.

As an adequate number of attorneys were ultimately available to represent all "takedown" Defendants who initially appeared on October 29, 2025, the matter appears to be moot as to the instant cases. Nonetheless, if defense counsel, the Office of the Federal Public Defender, or the District's Criminal Justice Act representatives would like to file a response, they shall do so by submitting a filing in the instant cases no later than fourteen days from the date of this Order. In the future, any memorandum on issues of law shall be filed on the docket of a case (with a case number or miscellaneous case number), rather than distributed by email or any other informal communication.

cc:   First Assistant United States Attorney Bilal Essayli
      Federal Public Defender Cuauhtemoc Ortega
      Marilyn Bednarski, CJA Panel Representative
      Anthony M. Solis, CJA Panel Representative

Attachment

# *Memorandum*



| Subject: | Date: |
|---|---|
| Appointment of Counsel for Indigent Defendants During Lapse of CJA Funding | October 27, 2025 |

| To: | From: |
|---|---|
| U.S. MAGISTRATE JUDGES<br>U.S. DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | ALEXANDER B. SCHWAB<br>Acting Chief, Criminal Division<br><br>FRANCES S. LEWIS<br>Chief, General Crimes Section<br><br>ALEXANDER P. ROBBINS<br>Acting Chief, Criminal Appeals Section<br><br>Assistant United States Attorneys<br>U.S. Attorney's Office<br>Central District of California |

## SUMMARY

The Court has informed us that, due to the lapse in Criminal Justice Act appropriations, there may not be enough attorneys who regularly serve as appointed counsel under the CJA who are willing to serve as counsel for initial appearances and detention hearings in the coming week, due to the inability of the Court to pay CJA attorneys at this time and the CJA attorneys' concern that they will not ultimately be paid for their services. The Court has requested that the U.S. Attorney's Office advise the Court regarding (1) the Court's authority to appoint counsel without pay and (2) the propriety of specially appointing a single attorney to represent multiple defendants charged in the same case during the initial proceedings, until such time as the Court is able to procure appointed, conflict-free counsel.

The U.S. Attorney's Office respectfully advises (1) that the Court has the authority to appoint counsel for defendants unable to afford criminal defense lawyers—whether or not CJA funds are immediately available to compensate those lawyers—and (2) that the Court also has the authority to

Appointment of Counsel
Page 2

specially appoint a single attorney for the limited purpose of representing multiple defendants at the initial appearance and bail hearing stage of the case, in the absence of an actual conflict, pending permanent appointment.

### A. This Court Can Require Members of Its Bar to Serve as Representatives of Indigent Defendants Without Compensation

Attorneys have long been appointed to serve without compensation, and doing so presents no constitutional problem. The Ninth Circuit has rejected Takings Clause challenges to occasional compelled service as a condition of bar membership. See Scheehle v. Justs. of Supreme Ct. of Ariz., 508 F.3d 887, 892–93 (9th Cir. 2007) ("in accepting admission to the Arizona Bar, and in practicing before the Maricopa Superior Court, Scheehle voluntarily became an officer of the court with the concomitant obligation to render service to the court when requested"); see also Fam. Div. Trial Laws. v. Moultrie, 725 F.2d 695, 705 (D.C. Cir. 1984) (similarly rejecting a takings challenge where the overall burden on the private bar was not "unreasonable"). Indeed, the Ninth Circuit has specifically recognized a longstanding "obligation on the part of the legal profession to represent indigents upon court order, without compensation." United States v. Dillon, 346 F.2d 633, 635 (9th Cir. 1965); see also United States v. 30.64 Acres of Land, 795 F.2d 796, 800 (9th Cir. 1986) ("Courts have long recognized that attorneys, because of their profession, owe some duty to the court and to the public to serve without compensation when called on." (citing Dillon)). Dillon even included an historical appendix, taken from the government's brief, surveying the history of appointed counsel. See 346 F.2d at 636 ("Representation of indigents upon court order is an ancient tradition of the legal profession, going as far back as fifteenth-century England and pre-Revolutionary America."). Other courts of appeals have rejected similar constitutional challenges. See Moultrie, 725 F.2d at 705 (rejecting a Thirteenth Amendment claim because the duty to serve is conditional on being a member of the bar); United States v. Vasquez, No. 25-CR-135-WBS, 2025 WL 2961906, at *1 (E.D. Cal. Oct. 20, 2025) ("federal courts have repeatedly and explicitly held that court-appointed counsel do not have any constitutional right to compensation") (emphasis in original)).

The power to appoint counsel for indigent defendants long predates the CJA, and is distinct from the CJA's compensation procedures. See Dillon, 346 F.2d at 636–68 (appendix) (laying out much of the history of court appointment, including Chief Judge Hale's opinion that imprisonment for

Appointment of Counsel
Page 3

contempt would be a proper remedy for an attorney's refusal to serve). "Attorneys are officers of the court, and are bound to render service when required by such an appointment." Powell v. Alabama, 287 U.S. 45, 73 (1932). The power to appoint counsel is "inherent" to the court, see United States v. Accetturo, 842 F.2d 1408, 1412 (3d Cir. 1988), although also recognized by Fed. R. Crim. P. 44(a) ("A defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from initial appearance through appeal, unless the defendant waives this right."). The power to appoint and the power to pay are obviously related, but they are not the same: in Dillon, the Ninth Circuit explained that appointment is a power of the court, while "[t]he problem of providing some system of compensation for appointed counsel . . . is a matter for legislative and not judicial treatment." 346 F.2d at 636. The Ninth Circuit specifically noted that "the enactment of the Criminal Justice Act of 1964, 78 Stat. 552," addressed the separate issue of compensation.

Nothing in the Criminal Justice Act took away the federal courts' inherent power to order members of their bars to represent indigent defendants. See 78 Stat. at 552–554 (1964). To the contrary, the CJA provides express statutory authority for it. Cf. 30.64 Acres, 795 F.2d at 804 n.16 (9th Cir. 1986) (reserving the question whether a federal court "has the inherent power to appoint counsel without compensation independent of statutory authorization"). Subsection (b) of the CJA, entitled "Appointment of Counsel," provides that when a person appears before a magistrate judge "without counsel," the court "shall advise the person that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel." 18 U.S.C. § 3006A(b); compare 78 Stat. at 552 (same, except referring to "commissioner[s]" instead of "magistrate judges"). The CJA then provides that, unless the person is either able to afford counsel or waives his right to counsel, the court "shall appoint counsel to represent him." Id. (emphasis added); see also 30.64 Acres, 795 F.2d at 801–02 (noting that an "appointment" under § 3006A(b), unlike a "request," is "a mandatory assignment"). The Act further provides that "[t]he United States magistrate judge or the court shall appoint separate counsel for persons having interests that cannot properly be represented by the same counsel, or when other good cause is shown." 18 U.S.C. § 3006A(b); compare 78 Stat. at 552. Only in subsection (d) does the CJA provide for "payment for representation" at "the conclusion of the representation or any segment thereof." Id. § 3006A(d); 78 Stat. at 553. Nothing in the appointment subsection is in any way conditional on the payment subsection.

Appointment of Counsel
Page 4

See also Report of the Judicial Conference of the United States, 36 F.R.D. 277, 293 (Jan. 13, 1965) (separately discussing payment under the CJA and noting that reimbursement "is dependent upon adequate appropriations to finance the system," that funds will "not be available before July 1, 1965," and that, "if the appropriations bill is not enacted until after that date, the funds will not be available until an even later date").

Nor did the CJA restrict the Court's appointment power under Rule 44, which also predates the CJA. To the contrary, Rule 44 was expanded as a result of Supreme Court caselaw. Compare Fed. R. Crim. P. 44, advisory comm. notes (1944) (noting that the original rule did "not include preliminary proceedings before a committing magistrate") with id., advisory comm. notes (1966) (noting that the revised appointment rule applies "to defendants unable to obtain counsel during all stages of the proceeding"). The committee notes cite the CJA in the context of discussing the expansion of the Court's appointing power to cover preliminary proceedings. See id. (noting that subsection (b) of Rule 44, which cross-references "[f]ederal law and local court rules," was added to "reflect[] the adoption of the Criminal Justice Act of 1964"). And the committee notes, like Dillon, also recognize the distinction between appointment and compensation. See id. (noting that the 1964 CJA "has now made provision for assignment of counsel and their compensation" (emphasis added)).

In sum, the current lack of CJA funding does not affect this Court's power to appoint members of its bar to represent indigent defendants under its inherent power, Rule 44, or the CJA. To be sure, "compelling members of the bar" to represent indigent defendants is only proper when those members of the bar are able to provide competent representation. See Betschart v. Oregon, 103 F.4th 607, 627 (9th Cir. 2024). They must have sufficient experience and time to prepare. See id. (rejecting the "idea that judges can just grab somebody out of the hallway"). But in addition to the CJA panel attorneys themselves, there are (at least) hundreds of qualified practicing members of the Central District of California bar, all of whom are duty-bound to accept a limited special appointment if ordered to do so by this Court. Scheehle, 508 F.3d at 892–93; Moultrie, 725 F.2d at 705.

Appointment of Counsel
Page 5

### B. Unless There Is an Actual Conflict, a Single Attorney Can Be Specially Appointed to Represent Multiple Defendants at Initial Appearances and Detention Hearings Before a Permanent Appointment Is Made

If the Court is unable to secure the attendance of a sufficient number of members of the bar to cover the appearances that would otherwise be handled by volunteer CJA attorneys, the Court may specially appoint a single attorney for the limited purpose of handling a defendant's initial appearance and detention hearing.[1]

Federal Rule of Criminal Procedure 44(a) provides that "[a] defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at a every stage of the proceeding from initial appearance through appeal, unless the defendant waives this right."  And defendants also have a constitutional right, guaranteed by the Sixth Amendment, to "the aid of counsel in a criminal prosecution," which implies a right to appointed counsel if they cannot afford to retain one.  Gideon v. Wainwright, 372 U.S. 335, 343 (1963) (citation omitted); Johnson v. Zerbst, 304 U.S. 458, 462–63 (1938).  That right attaches "at or after the time that judicial proceedings have been initiated against [the defendant] 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  Brewer v. Williams, 430 U.S. 387, 398 (1977) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)).  Once the right attaches, a defendant is guaranteed counsel—and an indigent defendant is guaranteed appointed counsel—"during any 'critical stage' of the post attachment proceedings."  Rothgery v. Gillespie County, 554 U.S. 191, 212 (2008); United States v. Cronic, 466 U.S. 648, 654–55 (1984); see also Betschart, 103 F.4th at 619.[2]

The Sixth Amendment further entitles criminal defendants to the effective assistance of counsel, which includes a right to conflict-free counsel.

---

[1] The government is aware of other Districts, like the District of Alaska, that have done this for multi-defendant takedown cases where procuring a sufficient number of panel attorneys on the same day has been difficult.

[2] The primary issue in Betschart was whether bail hearings are a "critical stage" of a criminal prosecution under such that state defendants were constitutionally entitled to appointed counsel at those proceedings.  The panel majority (Judges Owens and Mendoza) stopped short of "definitively resolv[ing] this

(continued . . . .)

Appointment of Counsel
Page 6

See, e.g., United States v. Mett, 65 F.3d 1531, 1534 (9th Cir. 1995).  To establish a Sixth Amendment violation based on a conflict of interest, a defendant must show that (1) counsel actively represented conflicting interests, and (2) an actual conflict of interest adversely affected his lawyer's performance.  United States v. Christakis, 238 F.3d 1164, 1168–69 (9th Cir. 2001).[3]

    Because the right to effective assistance of counsel is violated only by an "actual conflict of interest" that "adversely affect[s] [a] lawyer's performance," Mett, 65 F.3d at 1534, the Constitution does not prevent a court from allowing the same attorney to represent multiple defendants for the limited purpose of handling their initial appearances and detention hearings.  Actual conflicts that adversely affect a lawyer's performance are unlikely to occur at the initial-appearance stage of the proceedings, where the merits of the defendant's case are not being tested.  Nor are such conflicts likely to occur at proceedings to determine whether a defendant should be released or detained pending trial, because the factors to be considered by the

---

question," Betschart, 103 F.4th at 623, instead holding that bail hearings are sufficiently connected to "critical stage[s]" recognized by the Supreme Court that the Sixth Amendment right to appointed counsel attached in any event, id. at 619–24.  But see 103 F.4th at 645–46 (Bumatay, J., dissenting).  That Sixth Amendment question is not at issue here, because Rule 44 and § 3006A(b) both expressly provide for the appointment of counsel beginning at a defendant's initial appearance.  As noted above, Betschart's discussion of appointing members of the bar with no criminal or trial experience arose in the context of discussing whether the district court had abused its discretion in ordering—as a remedy for the Sixth Amendment violation—that defendants without counsel be released.  Here, the government agrees that defendants appearing before this Court have a right to appointed counsel if they cannot afford one.  The question is what power this Court has to avoid a violation of that right in the first place.

    [3] Trial courts may allow an attorney to proceed despite a conflict "if the defendant makes a voluntary, knowing, and intelligent waiver." Garcia v. Bunnell, 33 F.3d 1193, 1195 (9th Cir.1994).  Whether a defendant has made a valid waiver of his Sixth Amendment rights depends "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Edwards v. Arizona, 451 U.S. 477, 482 (1981).  In making such a determination, the Court must "indulge every reasonable presumption against the waiver of fundamental rights." United States v. Allen, 831 F.2d 1487, 1498 (9th Cir.1987) (citation omitted).

Appointment of Counsel
Page 7

Court in making that determination pertain to the defendant himself, *e.g.*, the history and characteristics of the defendant and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g)(3), (4). Unless the attorney had previously represented any of the defendants whom he or she is now being specially appointed to represent, it is unlikely any conflict would arise when considering the remaining factors, namely, the nature and circumstances of the offense charged and the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g)(1), (2). Initial appearances and bail hearings are thus very much unlike other critical decisions for defense counsel, such as whether to advise her client to plead guilty or cooperate with the government's investigation or prosecution of other defendants—where the potential for conflict with representing other co-defendants is obvious. It is unclear what conflict would arise in advocating for a client's release or bail conditions, or in advising a client regarding the nature of the charges against him.

The Criminal Justice Act reflects this. The Criminal Justice Act does not preclude the special appointment of an attorney for the limited purpose of conducting an initial appearance or detention hearing and requires only that separate counsel be appointed "for persons having interests that cannot properly be represented by the same counsel, or when other good cause is shown." 18 U.S.C. § 3006A(b). Given the limited role that the merits of a case play in an initial appearance or detention hearing, it is difficult to see how the same counsel could not properly represent two co-defendants at such hearings. Moreover, even if an "actual conflict" is brought to the Court's attention, defendants may waive the conflict and still allow the Court to appoint the same attorney, including a member of the Public Defender's office, to specially represent the defendants at their initial appearances and detention hearing.

To be clear, the government is not suggesting that co-defendants have the same counsel appointed for permanent representation in the same case, absent a knowing, intelligent, and voluntary waiver by the defendant. But there is no barrier in either the Constitution, the CJA, or Rule 44, to having the same lawyer make a special appearance for purposes of handling the initial hearings of co-defendants when the Court is unable to secure the attendance of independent attorneys.